JAMES HOBBS, administrator, *vs.* EASTERN RAILROAD COMPANY.

York, 1875.—August 28, 1876.

*Railroad.    Trial.*

In an action on the case against a railroad company to recover damages sustained by a passenger, through the alleged fault of the servants of the defendant corporation, at the trial of which it was claimed that the fault consisted in whole, or in part, of a violation of the established rules of the company, a book containing the rules and regulations of the company, and intended for the use of their employees, to direct them in the discharge of their duties, is admissible in evidence.

Where the issue before the jury is upon the negligence of the parties, and the testimony upon the points in controversy is conflicting or uncertain, it is not erroneous for the presiding judge, after stating to the jury in language to which no exception is taken the degree of care required on either side and that the plaintiff's right to recover depends upon proof to their satisfaction that the

injuries were received by the fault of the defendants, without fault on the part of the passenger contributing to the result, to decline upon request to determine as matter of law whether a certain state of facts, claimed on one side to exist and denied on the other, would or would not constitute negligence.

In such case the presiding judge is not required to anticipate every possible phase of disputed facts and determine in regard to each of them whether negligence, on the one side or the other, does or does not result therefrom as a legal conclusion; but may properly leave it to the jury to say under the rules of law given whether, upon the facts as they find them, any want of reasonable care on the passenger's part contributed to produce the injury.

ON EXCEPTIONS AND MOTION.

CASE for negligence of the defendants, whereby the plaintiff's intestate was so injured that she died. The full stenographic report of evidence and charge made part of the case on both motion and exceptions.

66  572
68  556

The declaration, with some other necessary averments, alleges that on November 6, 1872, the defendants carried the plaintiff as a passenger for hire, from North Berwick to South Berwick junction, arriving in the night time, and were negligent in not affording the intestate proper time or means of departure from the cars, and in the management and control of their engine and cars, that while she was in the act of departing from the cars, the defendants, suddenly and without warning to her, started their engine and cars backward with great force, whereby she was thrown under the wheels and run over by the cars, by reason whereof her arm was crushed and severed from her body, and that she was otherwise injured, and thereby suffered great pain of body and anxiety of mind, put to great expense, and rendered unable to live.

The evidence tended to show that she was injured in the manner alleged; that she was taken home, some thirty rods, by her husband, who was an employee of the railroad at the station; that a surgeon was called and amputated the arm, and that she died in the afternoon of the next day; that the train was made up of cars belonging to two railroads, the Eastern ahead, and the Boston & Maine in the rear, all drawn by one engine; that the cars of the two companies separated at the junction; that the Boston & Maine end of the train was detached about a quarter of a mile from the station at the South Berwick junction, the usual place; that a switch divided the trains about fifty rods from the

depot, and the Eastern train ran some two hundred feet past the depot, and then suddenly backed without the signal which the rules of the company required ; that the cars had arrived at the platform, and were still in motion when she attempted to alight, and somehow went under the moving train. The defendants' theory was, that she held to the rail with her right hand, having her valise in the left, facing the rear end of the car, that in stepping towards the platform, without releasing her hold, she swung around and fell on her face, her left arm under the cars ; but to this theory the plaintiff's counsel did not agree. There was evidence further tending to show that she was warned before alighting, not to get off while the cars were in motion, and that there would be time enough after the cars stopped.

The exceptions state thus : Against the seasonable objection of the defendants, the plaintiff was permitted to introduce in evidence a book entitled : "General rules and regulations of the Eastern Railroad," "For employees only." "August 5, 1872." "First edition"—and to read from the same at his pleasure, and the book went to the jury, and was by them carried to the jury room.

The defendants requested the presiding judge to instruct the jury, "that if any want of due and ordinary care on the part of Mrs. Hobbs contributed in any degree to cause the accident, resulting in her death, the plaintiff cannot recover." The judge gave appropriate instructions as to ordinary care and contributory negligence, but added : "What were the exact circumstances there that night ? You do not know precisely ; you haven't it from living witnesses. Nobody that has testified saw Mrs. Hobbs come away from that train, leave that car. . . . . . There is no doubt of one fact, and it is admitted that she was fatally injured there. Just how it was done, there is no evidence that I am aware of, except such as may be inferred from such facts as you have. Whatever was done by her, was she in the exercise of due and ordinary care ? If she was, and the railroad company was at fault, under the instructions I have given you, this plaintiff has a right to your verdict. If she was not in the exercise of due and ordinary care by getting out upon that platform while the cars

were in motion, backing upon the track to adjust themselves to the station, then there is one further question. Although the railroad company was in fault, and though the plaintiff was also in fault by not being in the exercise of due and ordinary care, still, if her want of care did not contribute to the injury, she can recover."

The defendants requested to have the jury instructed: "That if Mrs. Hobbs stood upon the lower step of the foot-board, encumbered with baggage, and attempted to alight therefrom while the train was in motion, this was such negligence as to preclude the plaintiff from maintaining this action." This instruction the judge declined to give, but left it to the jury to say whether, upon the whole facts, the negligence, or want of due and ordinary care, of Mrs. Hobbs, contributed at all to produce the injury which resulted in her death.

The verdict was for the plaintiff, for $5000; and the defendants alleged exceptions.

*E. B. Smith,* with whom was *I. T. Drew,* for the defendants.

*G. C. Yeaton,* for the plaintiff.

VIRGIN, J. This is an action on the case brought to recover damages for personal injuries sustained by the plaintiff's intestate a passenger on one of the defendants' trains. The injuries were fatal, and are alleged to have been the result of negligence on the part of the defendants' servants in the management of the train. The verdict was for the plaintiff in the sum of five thousand dollars, and the case comes before this court upon exceptions and a motion for a new trial.

The first exception to the admission of the book containing the rules of the defendant corporation, is not insisted upon in the argument and cannot be sustained. The admission of the book as part of the evidence in the case for the purposes and under the limitations stated in the charge (to which the bill of exceptions authorizes the court to refer) was not erroneous; and the use of it by the jury in their room after retiring to consider the verdict, was within the discretion of the justice presiding at the trial.

Exceptions are also taken to the refusal of the presiding justice

to give two specific instructions requested by the defendants, upon the subject of contributory negligence on the part of the plaintiff's intestate, and to certain extracts from the charge as it was given, relating principally to the same topic.

Although the precise language of the first request was not adopted by the court, the right of the plaintiff to recover was made to depend throughout the charge, upon proof to the satisfaction of the jury that the injuries were received by the fault of the defendant company without fault on the part of the plaintiff's intestate contributing to the result; and the degree of care required on either side, failure to exercise which would constitute a fault, is stated in language to which no exception is taken. It can only be said that the first requested instruction was refused in the precise terms in which it is drawn: but this affords no ground for exception since its entire substance was covered by the charge as given.

The bill of exceptions further states that the judge gave appropriate instructions as to ordinary care and contributory negligence, but then follow certain sentences from the charge, to which exception is taken.

We do not perceive that this exception is urged in argument, and upon examination we fail to see that whether standing alone or taken in their proper connection with the instructions of which they form a part, they are not, so far as they touch upon any matter of law, in exact accordance with well recognized and established legal principles.

The remaining exception has reference to the refusal of the court to give the instruction last requested.

This was substantially a request in a case where the issue was upon the negligence of the parties and where the testimony upon vital points was not only more or less remote and uncertain, but seriously conflicting, to withdraw from the consideration of the jury and to determine, as matter of law, the question whether a certain state of facts, claimed on the one side to exist and denied on the other, would or would not constitute negligence on the part of the plaintiff's intestate. To grant the request, or at least to sustain exceptions for not granting it, would be to make the

question of negligence, upon admitted facts, in all cases, in the first instance, a question purely of law. If it were erroneous to refuse this, it would have been equally erroneous for the court to decline upon request to declare whether any other state of facts, which it would be possible, or at least justifiable, for the jury to find from the evidence, would or would not constitute negligence on the one side or the other.

The decisions and the practice in the courts of this state do not go to that extent. The law establishes the standard of care required in given cases. It furnishes general rules and principles —as given to the jury at this trial—by which to determine whether the conduct of men, under varying circumstances, has been charterized by a reasonable degree of discretion, or by the absence of it, whether there has been in any instance a departure from that standard. Whether there has been an absence of the degree of care required, is usually a question of fact. More especially should it be so regarded where the facts must be evolved from a mass of testimony more or less doubtful or conflicting, and where it might be impossible for any number of instructions based upon supposed facts to cover the actual finding of the jury.

We are aware that this court, in *Webb* v. *P. & K. Railroad,* 57 Maine, 117, 131, has said in substance that possibly there might be a case where the facts were so clear and free from controversy as to make the question of negligence a question of law, and that this doctrine may perhaps have been confirmed by the recent case of *Kellogg* v. *Curtis,* 65 Maine, 59 ; but we know of no case in this state in which it has been held to be error on the part of the judge presiding at the trial of a case like this to decline to select a series of facts possible to exist from the testimony and state to the jury as matter of law whether such facts, if found, would or would not constitute negligence.

In cases like the present, which involve the credibility and the accuracy of witnesses, where the questions in controversy are questions of fact, where the vital issue is to be determined by drawing the correct inference from facts which immediately preceded and immediately followed the principal transaction, and when it is possible to perceive more than one decision at which the tribunal

established for determining questions of fact might arrive without being open to the charge of manifestly disregarding the evidence, it is not the duty of the judge to anticipate every possible finding of the jury and state to them whether negligence is or is not the legal inference from each. In view of the instructions given, the refusal to give the last requested instruction affords no ground for exception. However true it may be as a proposition of fact, that the acts set forth in said request would constitute negligence on the part of the plaintiff's intestate, notwithstanding, even, it might be the duty of the court (if the facts supposed were the real ones,) to set aside a verdict of the jury to the contrary, as against evidence, yet after full and appropriate instructions on this subject, it was not error on the part of the judge to decline to assume these facts as an hypothesis and declare that they would constitute negligence. Clear definitions to the jury of what the law means by the term negligence, and the control of the court properly exercised over verdicts erroneously rendered, will be adequate to preserve the legal rights of parties without requiring the judge presiding at a jury trial first to determine what may be the possible phases of disputed facts, and then to withdraw each from the consideration of the jury and say as matter of law whether negligence on the one side or the other does or does not result as a legal conclusion.

The exceptions state that after declining to give the requested instruction, the judge left it to the jury to say whether upon the whole facts Mrs. Hobbs' negligence or want of due and ordinary care contributed at all to produce the injury which resulted in her death. This was correct.

Upon the motion for new trial on the alleged ground that the verdict is against law and evidence, much that has been said in regard to the exceptions is pertinent.

That the defendant corporation was in fault, that at the time and place of the injury it was conducting the train on which the plaintiff's intestate had taken passage without reasonable regard for the security of passengers and in violation of provisions of law intended to promote the safety of travelers upon railways, are conclusions to which if the jury were not compelled, they were at least justified in reaching. Whether such fault on the part of the

defendants was the sole cause of the injury, or whether the negligence of the plaintiff's intestate contributed in any degree to cause it, are questions upon which the jury have passed under correct rulings on matters of law. After careful examination of the case we do not find such disregard of the instructions of the court or such errors in findings of facts as will justify us in setting aside the verdict.

A partial obscurity rests upon the case as to what took place at the very time when Mrs. Hobbs left the train. But if the jury found that at that moment the backing train had halted and by a sudden start, she while in the act of alighting was thrown under the wheels, or if they found that the train while backing, did not stop entirely, but that Mrs. Hobbs, while standing upon the platform of the car and not attempting to alight, was thrown off and under the wheels by a quick sudden increased motion of the train, we could not say that either finding was manifestly against the evidence in the case, or that it was easy to find any theory which would better explain the facts of the case, than one of these; and if the jury were warranted upon the testimony in finding either of the above theories to be facts, then the other testimony in the case clearly justified them under the rulings given in finding that the defendants were liable. *Sauter* v. *N. Y. C. & H. R. Railroad,* New York case not yet reported.

The motion founded on the alleged ground that the damages are excessive, is also overruled.

There is no evidence of misconduct, mistake or prejudice on the part of the jury except the presumption which it is claimed arises from the verdict itself. In this class of cases, wide discretion is left to the jury in the assessment of damages, and it is clearly at present the intent of the laws of this state that it should be so.

We know of no standard by which it can be determined that the sum of $5000 for injuries sustained under the circumstances developed in the testimony in this case and resulting in death, are excessive. *Motion and exceptions overruled.*

APPLETON, C. J., BARROWS, DANFORTH and PETERS, JJ., concurred.